Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA  99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 1 3 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

DERRICK GENE BONATO,

Defendant.

2:24-CR-0046-RLP

PLEA AGREEMENT

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, DERRICK GENE BONATO ("Defendant"), both individually and by and through Defendant's counsel, David Miller, agree to the following Plea Agreement:

1.    Guilty Plea and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to Count 2 of the Indictment filed on March 19, 2024, charging Defendant with Possession with Intent to Distribute 40 Grams or More of a Mixture or Substance Containing Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), a Class B felony.

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment of not less than 5 years no more than 40 years;

PLEA AGREEMENT - 1

      b.    a term of supervised release of not less than 4 years and up to a lifetime;

      c.    a fine of up to $5,000,000; and

      d.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

      a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

      b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

      c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>Denial of Federal Benefits</u>:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or

PLEA AGREEMENT - 2

commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4.   Potential Immigration Consequences of Guilty Plea:

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.   The Court is Not a Party to the Plea Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

    b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

PLEA AGREEMENT - 3

d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.   the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6.   <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.   the right to a jury trial;

b.   the right to see, hear and question the witnesses;

c.   the right to remain silent at trial;

d.   the right to testify at trial; and

e.   the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.   <u>Elements of the Offense</u>:

The United States and Defendant agree that to convict Defendant of Possession with Intent to Distribute 40 Grams or More of a Mixture or Substance Containing

PLEA AGREEMENT - 4

Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about December 14, 2023, in the Eastern District of Washington, Defendant knowingly possessed a mixture or substance containing a detectable amount of fentanyl;

> *Second*, Defendant possessed a mixture or substance containing a detectable amount of fentanyl with the intent to distribute it to another person; and

> *Third*, the mixture or substance containing a detectable amount of fentanyl weighed more than 40 grams.

8. Statement of Facts and Stipulation:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

The Drug Enforcement Administration ("DEA") and the Spokane Police Department ("SPD") were investigating a drug trafficking organization based in Mexico run by "Junior".

*May 2023 Traffic Stop*

On May 11, 2023, DEA and SPD were engaged in surveillance of a runner for this organization who was delivering fentanyl pills to customers in the Spokane, Washington area. During that surveillance, DEA and SPD observed the runner meet with an individual later identified as Defendant, in a manner consistent with previous drug distributions by members of this organization. SPD conducted a traffic stop on the vehicle and identified the driver as Defendant and the passenger as his girlfriend,

PLEA AGREEMENT - 5

Chandra.  Defendant provided a post-*Miranda* statement and in summary, he advised there were 3,000 fentanyl pills in his vehicle.  He consented to the search of the vehicle to retrieve the drugs.  DEA recovered the fentanyl pills as well as several ounces of methamphetamine.  The fentanyl pills were sent to the DEA Laboratory for analysis where they were confirmed to contain fentanyl, and the approximately 3,580 pills[1] recovered from the vehicle weighed approximately 382.8.  The DEA Laboratory also tested the methamphetamine and determined it contained approximately 109.4 grams of actual (pure) methamphetamine.

*December 2023 Search Warrant & Arrest*

In December 2023, SPD Major Crimes Detectives were investigating a homicide that occurred in the Spokane area.  The investigation showed a person of interest left from Defendant's Spokane-area residence and was involved in the homicide[2].  On December 14, 2023, a search warrant was executed on Defendant's residence related to that investigation.  Upon execution, SPD Major Crimes Detectives located distribution-quantity fentanyl pills and a small amount of cocaine as well as firearms, and an amended search warrant was obtained to seize those items.  There was also a DVR set up to record events inside Defendant's residence, which showed Defendant in possession of large quantities of U.S. Currency, as well as bulk quantities of fentanyl pills.  The Defendant was also observed in possession of multiple firearms.  Defendant's cell phone was also searched, and numerous messages were located documenting Defendant obtaining and distributing drugs.  The seized fentanyl pills were sent to the DEA Laboratory for analysis where they were confirmed to contain fentanyl, and the approximately 5,475 pills weighed approximately 500.9 grams.  The DEA Laboratory also tested the cocaine and determined it weighed approximately 3.16 grams.

---

[1] Exhibit 710 is still pending analysis with the DEA Laboratory.

[2] The SPD Major Crimes investigation ultimately showed Defendant was not involved in the homicide.

PLEA AGREEMENT - 6

On December 15, 2023, Defendant was located and arrested. Defendant was found to have methamphetamine and fentanyl pills in his possession. Those substances were sent to the DEA Laboratory for analysis[3], and determined to be approximately 1,513 pills weighing approximately 158.6 grams, and approximately 3.803 grams of actual (pure) methamphetamine.

9.    The United States Agrees:

a.    *Not to File New Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment, Information, or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

b.    *Dismiss Remaining Counts*:

The United States agrees to dismiss the remaining counts of the Indictment at the time of sentencing unless Defendant breaches this Plea Agreement.

10.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    *Base Offense Level and Relevant Conduct*:

The United States and Defendant agree to recommend to the Court the Base Offense Level is 32[4] based on the Defendant's relevant conduct as he personally

---

[3] Exhibit 705 is still pending analysis with the DEA Laboratory.

[4] This recommendation is based upon the anticipated results from the DEA Laboratory. Should the DEA Laboratory results not support this recommendation, each party is free

PLEA AGREEMENT - 7

possessed with the intent to distribute at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight. *See* USSG §2D1.1(a)(5), (c)(4); USSG §1B1.3(a).

b.    *Specific Offense Characteristics*:

The United States and Defendant agree to recommend a 2-level enhancement applies as Defendant possessed a dangerous weapon. *See* USSG §2D1.1(b)(1). The United States and Defendant agree to recommend no additional specific offense characteristics may apply. *See generally* USSG §2D1.1(b).

The parties agree Defendant is not eligible for the application of the Safety Valve pursuant to USSG §2D1.1(b)(18), USSG §5C1.2, 18 U.S.C. § 3553(f).

c.    *Role Adjustments*:

The United States and Defendant agree to recommend no role adjustment applies. *See* USSG §3B1.1; §3B1.2.

d.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a), (b), if Defendant does the following:

i.    accepts this Plea Agreement;

ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.    provides complete and accurate information during the sentencing process; and

v.    does not commit any obstructive conduct.

to recommend whatever Base Offense Level the party feels is supported by the laboratory results.

PLEA AGREEMENT - 8

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

      e.    *Candor to the Tribunal*:

The United States and Defendant agree that the United States and Defendant each have a duty of candor to the tribunal, and the right to respond to the arguments made by the other. The United States and Defendant agree that the following agreements apply to this Plea Agreement, without limitation:

      i.    the United States and Defendant may each respond to any questions from the Court at any hearing in this case;

      ii.    the United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant to the Court in sentencing papers or at any hearing in this case;

      iii.    as part of the sentencing proceedings in this case, the United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

      iv.    the United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the PSIR;

      v.    the United States and Defendant may each respond to any arguments presented by the other party in any filing or at

PLEA AGREEMENT - 9

any hearing, including any sentencing papers, any objections or responses to the PSIR, and any hearings in this case;

vi.    in order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court; and

vii.    in order to support the defense sentencing recommendation as set forth herein, the Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court; and

viii.    the United States may make any sentencing arguments it deems appropriate, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

ix.    Defendant may make any sentencing arguments it deems appropriate.

PLEA AGREEMENT - 10

The United States and Defendant each agree not to file an appeal claiming implicit breach of this Plea Agreement based on conduct by the other party that is consistent with subsections i-ix immediately above.

f.    *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

g.    *Criminal History*:

The United States and the Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed.

11.    <u>Length of Incarceration</u>:

The United States agrees to recommend a term of incarceration no higher than the low-end of the advisory guideline as calculated by the United States[5]. Defendant is free to recommend any lawful sentence.

---

[5] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what

PLEA AGREEMENT - 11

## 12. Supervised Release

The United States and Defendant each agree to recommend 4 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a.   the United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.   Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c.   Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

\\

---

positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 12

13.  Asset Disposal:

a.  *Judicial Forfeiture*:

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the Glock Model 19 9mm pistol bearing serial number BHLA136 to the United States:

Defendant acknowledges that the firearm listed above is subject to forfeiture to the United States pursuant to 21 U.S.C. § 853, as property constituting or derived from proceeds obtained directly or indirectly from the offense and/or as property used or intended to be used to commit or facilitate the offense to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

PLEA AGREEMENT - 13

b.    *Property Disposal*:

Defendant does not claim an interest in the Glock Model 20 10mm pistol bearing serial number BVXX623 and does not oppose its disposal by destruction or return to a legitimate owner by the United States Drug Enforcement Administration ("DEA").

Defendant agrees to hold all law enforcement and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and disposal of any assets covered by this agreement.

Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any other action that DEA might take in its sole discretion to carry out the disposal of the assets. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims, or challenges, on any grounds, arising at any time from, or relating to, the seizure and disposition of the assets, including any such claim for attorney fees and litigation costs.

14.    Criminal Fine:

The United States and Defendant agree to recommend no criminal fine be imposed. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

15.    Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.    Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

PLEA AGREEMENT - 14

17.    Additional Violations of Law Can Void Agreement:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    Waiver of Appeal and Collateral Attack Rights:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19.    Withdrawal or Vacatur of Defendant's Plea:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    this Plea Agreement shall become null and void;

PLEA AGREEMENT - 15

    b.    the United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.    <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 16

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____ For          _____
Caitlin Baunsgard                                      Date 1/13/25
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____          1-13-25
DEREK GENE BONATO                              Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with the Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____          1-13-25
David Miller                                            Date
Attorney for the Defendant

PLEA AGREEMENT - 17